**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JERMAINE J. JACKSON,<br><br>Plaintiff,<br><br>v.<br><br>HEMPSTEAD VILLAGE HOUSING ASSOCIATES, L.P. and WB RESIDENTIAL COMMUNITIES, INC.<br><br>Defendants | 26 Civ. 5012<br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff, **JERMAINE J. JACKSON,** by his attorney, James E. Bahamonde from the Law Offices of James E. Bahamonde, PC, and for his Complaint against Defendants **HEMPSTEAD VILLAGE HOUSING ASSOCIATES, L.P.** and **WB RESIDENTIAL COMMUNITIES, INC.** respectfully allege as follows:

**STATEMENT OF CLAIMS**

1. Plaintiff brings this action against Defendants **HEMPSTEAD VILLAGE HOUSING ASSOCIATES, L.P.** and **WB RESIDENTIAL COMMUNITIES, INC.** for declaratory judgment, injunctive relief, and damages on the basis of disability discrimination, failure to make a reasonable accommodation, and interference, intimidation, and threats in violation of the Fair Housing Act, 42 USC § 3601, *et seq*., the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.,* New York State Human Rights Law, NYS Executive Law § 296, *et seq*., and Nassau County Administrative Code § 21-9 *et seq*.

2. Plaintiff seeks declaratory, injunctive and equitable relief, as well as actual, nominal, compensatory damages, and fees and costs against Defendants.

3. Plaintiff seeks punitive damages against each Defendant for their reckless and/or

callous indifference to his rights under the Fair Housing Act, the Rehabilitation Act, New York State Human Rights Law, and the Nassau County Administrative Code.

**JURISDICTION AND VENUE**

4. That at all times mentioned hereinafter, Plaintiff is now, and at all times mentioned in this complaint, a resident of Hempstead, New York.

5. Venue is proper in this Court because the real property where the events occurred exists in Nassau County, New York.

6. Venue is proper in this court because Plaintiff is a resident of Nassau County, New York.

7. Venue is proper in this Court because Defendant HEMPSTEAD VILLAGE HOUSING ASSOCIATES, L.P.'s principal offices are located in Nassau County, New York.

8. Plaintiff invokes the jurisdiction of the Court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 3613.

9. The Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under the Fair Housing Act and the Rehabilitation Act.

10. The Court has supplemental jurisdiction over Plaintiff's State and County law claims pursuant to 28 U.S.C. § 1367(a).

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, or omissions, giving rise to this action, including the unlawful practices alleged herein, occurred within this District.

**PARTIES**

12. During all relevant times, Plaintiff **JERMAINE J. JACKSON** was, and

continues to be, a resident of Nassau County, New York. Mr. Jackson has been, and continues to be, adversely affected by the acts, policies, and practices of the Defendants and their agents.

13. During all relevant times, Mr. Jackson has been a qualified, rent-paying tenant of a unit at Defendants' multifamily residential apartment complex, Woods Edge Apartments.

14. During all relevant times, Defendant **Hempstead Village Housing Associates, L.P.** has been a domestic limited partnership authorized by the Secretary of State of New York to do business in New York State with its principal County of business designated as Nassau County, New York.

15. Defendant **Hempstead Village Housing Associates, L.P.** does business under the assumed name Woods Edge Apartments.

16. During all relevant times, Defendant **Hempstead Village Housing Associates, L.P.** has owned a multifamily apartment building located at 130 Jerusalem Avenue, Hempstead, New York.

17. During all relevant times, Defendant **WB Residential Communities, Inc.** has been a domestic corporation authorized by the Secretary of State of New York to do business in New York State with its principal County of business designated as Westchester County, New York.

18. During all relevant times, Defendant **WB Residential Communities, Inc.** has been the company contracted by Hempstead Village Housing Associates, L.P. to manage the multifamily dwelling owned by Defendant **Hempstead Village Housing Associates, L.P.**

**STATUTORY SCHEME**

19. Under the Fair Housing Act, the Rehabilitation Act, New York State Human Rights Law, and Nassau County Administrative Code, a housing provider is required to make

reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford persons with disabilities equal opportunity to use and enjoy a dwelling.

20. New York State Human Rights Law prohibits housing providers from making notices or statements which expresses, directly or indirectly, any limitation, specification or discrimination as to disability, or any intent to make any such limitation, specification or discrimination.

21. Likewise, the Fair Housing Act, the Rehabilitation Act, New York State Human Rights Law, and the Nassau County Administrative Code make it illegal to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any person in the exercise or enjoyment of any right granted.

22. To encourage owners of multifamily dwellings to be active supervisors of their subordinates, the Fair Housing Act imposes vicarious liability upon principals or employers for the acts of their agents or employees. Consequently, a principal is legally responsible for the acts, conduct, and statements of their agent(s).

## FACTUAL BACKGROUND

23. Mr. Jackson has been a qualified resident at Defendants' multifamily apartment building named Woods Edge Apartments for approximately 12 years.

24. Mr. Jackson resides by himself in a one-bedroom apartment in the Woods Edge Apartments complex, owned and controlled by Defendant Hempstead Village Housing Associates, L.P., and managed by co-Defendant WB Residential Communities, Inc.

25. Woods Edge Apartments is a Section 8 subsidized multifamily apartment project

consisting of multiple buildings located in Hempstead, New York.

26. During all relevant times, Mr. Jackson has had schizoaffective disorder and has received mental health treatment and medication for his disorder .

27. Mr. Jackson is substantially limited in thinking, concentrating, communicating, and his ability to manage stress.

28. Defendants and their agents have been aware of Mr. Jackson's mental health diagnosis and limitations.

29. Dominique Jackson is Mr. Jackson's sister. She also resides at the Woods Edge Apartments, but in a different building.

30. During all relevant times, Ms. Jackson has been her brother's advocate in managing his rent and communication with Defendants.

31. In early April 2026, Mr. Jackson was experiencing mental-health difficulties and was not receiving appropriate treatment or consistently taking his prescribed medication.

32. On April 2, 2026, Mr. Jackson became involved in a verbal dispute with another resident after that resident failed to repay money she had borrowed from him. Defendants later mischaracterized the incident as a threat to that resident's health and safety and later relied upon the alleged threat as a basis for the Notice of Termination of Tenancy dated May 21, 2026.

33. On April 3, 2026, Defendants alleged that Mr. Jackson threatened and engaged in a physical altercation with the complex's assistant superintendent, Maurice Tanner. Mr. Jackson denies the allegation, and, upon information and belief, video surveillance footage exists that contradicts Defendants' account and supports Mr. Jackson's version of events. Nonetheless, Defendants deliberately mischaracterized this incident, and used it as a basis for the Notice of Termination of Tenancy dated May 21, 2026.

34. During the April 3, 2026 incident, the assistant superintendent purposely antagonized, instigated and provoked Mr. Jackson by aggressively and physically confronting him.

35. On April 4, 2026, Mr. Jackson voluntarily sought medical treatment, hospitalization and psychiatric care. Currently, Mr. Jackson is under medical supervision, taking prescribed medications, and is actively participating in, and following his treatment plan.

36. After Mr. Jackson was hospitalized, Ms. Jackson informed Defendants and their agents that he was receiving mental health treatment. Further, Ms. Jackson requested, on behalf of her brother, a reasonable accommodation to assist with resolving any tenancy issues arising regarding Mr. Jackson. Additionally, she also requested to be kept informed of all matters concerning Mr. Jackson's tenancy.

37. Defendants constructively refused Ms. Jackson's request for reasonable accommodation as they failed to communicate with Ms. Jackson regarding her brother's tenancy

38. On June 3, 2026, Defendants served Mr. Jackson with a Notice of Termination of Tenancy. The Notice did not offer him an opportunity to cure the alleged deficiency and was served only ten days in advance, rather than the thirty days required by 24 C.F.R. § 247.4 and New York State Real Property Law § 228.

39. The Notice of Termination of Tenancy alleges that the tenancy is being terminated for material noncompliance. Specifically, for adversely affecting the health or safety of any tenant and engaging in criminal activity.

40. On June 5, 2026, Mr. Jackson requested a reasonable accommodation from Maritza Cruz, Regional Manager of WB Residential Communities Inc., asking Defendants to withdraw the Notice of Termination and Holdover Petition, to allow him to remain in his home.

Mr. Jackson explained to Defendants that he was experiencing a mental health crisis in early April 2026 and was not receiving the appropriate treatment or taking his prescribed medication.

41. In response to Mr. Jackson's June 5, 2026 request, Defendants directed him to submit a reasonable accommodation form, which he promptly completed and returned. Defendants never responded to the request and have not withdrawn the Notice of Termination of Tenancy or the Holdover Petition.

42. On or about June 16, 2026, Defendants filed a Holdover Petition to Recover the apartment from Mr. Jackson.

43. Defendants continued to pursue the Holdover Petition despite knowing that Mr. Jackson had requested a disability-related reasonable accommodation, that Ms. Jackson had offered to assist with resolving any tenancy issues arising regarding her brother, and that Mr. Jackson had obtained medical treatment, is stabilized, and remains under medical supervision.

44. Defendants' refusal to even consider and respond to the two requested reasonable accommodations -- to rescind the Notice of Termination, withdraw the Holdover Petition, communicate with Ms. Jackson, and engage in a meaningful interactive process -- deprived Mr. Jackson of an equal opportunity to use, remain in and enjoy his home, and thus engaged in unlawful discrimination against Mr. Jackson.

## LEGAL CLAIMS

### FIRST CAUSE OF ACTION
### (Violations of the Fair Housing Act, 42 USC 3604 et seq.)

45. Plaintiff realleges and incorporates by reference all of the allegations set forth in this Complaint as if fully set forth herein.

46. Plaintiff is an "aggrieved person" as defined in 42 U.S.C. §§ 3602(i) and 3613(a)(1)(A).

47. Defendant Hempstead Village Housing Associates, L.P. 's multifamily housing project located in Hempstead, New York, contains four or more units. As such, it is a covered multifamily dwelling as defined in U.S.C. § § 3604(f)(7).

48. Defendants have discriminated against Plaintiff in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of a disability of that person, or a person residing in that dwelling, or any person associated with that person in violation of 42 U.S.C. § 3604(f)(2).

49. Defendants have made or caused to be made, printed, or published any notice, or statements, with respect to the rental of a dwelling that indicate a preference, limitation, or discrimination based on disability, or an intention to make any such preference, limitation or discrimination in violation of 42 U.S.C. § 3604(c).

50. Defendants have discriminated against Plaintiff by refusing to make reasonable accommodations in the rules, policies, practices, or services, when such accommodations were/are necessary to afford Plaintiff with equal opportunity to use and enjoy a dwelling in violation of 42 U.S.C. § 3604(f)(3)(B).

51. The accommodations requested by Plaintiff are necessary to afford him with the equal opportunity to use and enjoy a dwelling.

52. The accommodations requested by Plaintiff do not pose an undue burden.

53. The requested accommodations do not fundamentally alter the nature of the housing provider's operation.

54. As a direct and proximate result of Defendants' unlawful discrimination in violation of the Fair Housing Act, Plaintiff has suffered, continue to suffer, and will in the future suffer, great loss of housing opportunity, great and irreparable loss and injury, physical and

emotional distress and pain -- including but not limited to great levels of fear, anxiety, insomnia, indignity, humiliation, loss of self-esteem and self-confidence, and attendant bodily injury, violently ill, vomiting, stomach aches, physical pain, high blood pressure, migraine headaches, and otherwise sustained injury.

55. Defendants' discriminatory actions were intentional, willful, and with reckless disregard for the rights of the Plaintiff. Defendants also knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in knowledgeable inaction. As a result, under 42 U.S.C. § 3613(c), Plaintiff is entitled to punitive damages.

**SECOND CAUSE OF ACTION**

**(Coercion, Intimidation, Threaten, and Interference in Violation of the Fair Housing Act, 42 U.S.C. § 3617)**

56. Plaintiff realleges and incorporates by reference all of the allegations set forth in this Complaint as if fully set forth herein.

57. The conduct of Defendants constitutes retaliation, coercion, intimidation, threatening, and interference with Plaintiff in the exercise or enjoyment of, or on account of an, Plaintiff having exercised or enjoyed any right granted or protected by the Fair Housing Act in violation of 42 U.S.C. § 3617.

58. Plaintiff was engaged in a protected activity.

59. Requesting a reasonable accommodation is a protective activity.

60. Defendants were aware that Plaintiff engaged in a protected activity.

61. Defendants took adverse action against Plaintiff regarding each requested reasonable accommodation.

62. As a direct and proximate result of Defendants' unlawful discrimination in violation of the Fair Housing Act, Plaintiff has suffered, continue to suffer, and will in the future

suffer, great loss of housing opportunity, great and irreparable loss and injury, physical and emotional distress and pain -- including but not limited to great levels of fear, anxiety, insomnia, indignity, humiliation, loss of self-esteem and self-confidence, and attendant bodily injury, violently ill, vomiting, stomach aches, physical pain, high blood pressure, migraine headaches, and otherwise sustained injury.

63. Defendants' discriminatory actions and retaliation were intentional, willful, and with reckless disregard for the rights of the Plaintiff. Defendants also knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in knowledgeable inaction. As a result, under 42 U.S.C. § 3613(c)(1), Plaintiff is entitled to punitive damages.

**THIRD CAUSE OF ACTION**
**(Violations of the Rehabilitation Act)**

64. Plaintiff realleges and incorporates by reference all of the allegations set forth in this Complaint as if fully set forth herein.

65. Plaintiff has a handicap as that term is defined by the Rehabilitation Act.

66. Plaintiff is a qualified individual with a disability as that term is defined by the Rehabilitation Act.

67. Defendants employ 15 or more people.

68. Defendants are recipients of federal financial assistance as that term is defined by the Rehabilitation Act.

69. The Woods Edge Apartments are a multifamily housing project containing five or more dwelling units.

70. Upon information and belief, Defendants have failed to perform a self-evaluation of its current policies and practices, and the effects thereof, to determine whether they do or do

not meet the requirements of the Rehabilitation Act.

71. On the basis of Plaintiff's disability, Defendants denied Plaintiff the opportunity to participate in or benefit from the housing, aid, benefit, or service.

72. On the basis of Plaintiff's disability, Defendants did not afford Plaintiff an opportunity to participate in or benefit from the housing, benefit, or service that is equal to that afforded others.

73. On the basis of Plaintiff's disability, Defendants denied Plaintiff with the housing, aid, benefit, or service that is as effective as that provided to others.

74. Defendants provided different or separate housing, aid, benefit, or service to Plaintiff.

75. Defendants failed to take the appropriate steps to assure effective communication with Plaintiff.

76. Defendant failed to make reasonable accommodations with respect to Plaintiff's disability.

77. The necessary reasonable accommodations would not impose an undue hardship on the operation of Defendants' program.

78. As a direct and proximate result of Defendants' unlawful discrimination in violation of Rehabilitation Act, Plaintiff has incurred actual damages and loss of opportunity.

**FOURTH CAUSE OF ACTION**
**(Violations of New York State Human Rights Law)**

79. Plaintiff realleges and incorporates by reference all of the allegations set forth in this Complaint as if fully set forth herein.

80. Plaintiff and Defendants are "persons" as defined in New York State Executive Law § 292(1).

81. Plaintiff's apartment unit is a "housing accommodation" as defined in New York State Executive Law § 292(10).

82. Defendant Hempstead Village Housing Associates L.P.'s residential development is a "multifamily dwelling" as defined in New York State Executive Law § 292(12).

83. Plaintiff has a disability as defined in New York State Executive Law § 292(21).

84. Defendants have refused to rent, lease or otherwise denied or withheld from Plaintiff such housing accommodation because of disability in violation of New York State Executive Law §§ 296(5)(a)(1) and 296(5)(b)(1).

85. Defendants have discriminated against Plaintiff, on the basis of disability, in the terms, conditions or privileges of rental or lease of any such housing accommodation or in the furnishing of facilities or services in connection therewith in violation of New York State Executive Law §§ 296(5)(a)(2) and 296(5)(b)(2).

86. Defendants have printed, circulated, or caused to be printed or circulated any statement or publication which has expressed, directly or indirectly, any limitation, specification or discrimination as to disability, or any intent to make any such limitation, specification or discrimination in violation of New York State Executive Law §§ 296(5)(a)(3) and 296(5)(b)(3).

87. Defendants have aided, abetted, incited, compelled, or coerced the doing of any of the acts forbidden under New York State Human Rights Law, or attempted to do so in violation of New York State Executive Law § 296(6).

88. Defendants have retaliated or discriminated against Plaintiff because they have engaged in practices forbidden under New York State Human Rights Law in violation of New York State Executive Law § 296(7).

89. Defendants have refused to make reasonable accommodations in the rules,

policies, practices, or services, when such accommodations may be necessary to afford Plaintiff equal opportunity to use and enjoy a dwelling in violation of New York State Executive Law § 296(18)(2).

90. The accommodations requested by Plaintiff are reasonable and do not impose an undue hardship on Defendants.

91. As a direct and proximate result of Defendants' unlawful discrimination in violation of New York State Executive Law, Plaintiff has suffered, continues to suffer, and will in the future suffer, great and irreparable loss and injury including physical and emotional distress and pain -- including but not limited to great levels of fear, anxiety, insomnia, indignity, humiliation, loss of self-esteem and self-confidence, and attendant bodily injury, violently ill, vomiting, stomach aches, physical pain, high blood pressure, migraine headaches, and otherwise sustained injury.

92. Defendants' discriminatory actions in violation of New York State Executive Law were intentional, willful, and with reckless disregard for the rights of Plaintiff. Defendant also knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in knowledgeable inaction. As a result, under New York Executive Law § 297(10), Plaintiff is entitled to punitive damages.

**FIFTH CAUSE OF ACTION**

(Violations of Nassau County Administrative Code § 21-9 *et seq*.)

93. Plaintiff realleges and incorporates by this reference all allegations set forth in this Complaint as if fully set forth herein.

94. Plaintiff's mental health diagnosis places him in a protected status, as that term is defined by Nassau County Administrative Code § 21-9.2.

95. Plaintiff and Defendants are "persons" as defined in Nassau County

Administrative Code § 21-9.2(j).

96. At all times stated herein, Maurice Tanner, Maritza Cruz, and Lisamaria Alexander acted as agents for Defendants as defined in Nassau County Administrative Code § 21-9.7(b)(1)

97. Plaintiff has a disability as defined in Nassau County Administrative Code § 21-9.2(e).

98. Defendant Hempstead Village Housing Associates L.P.'s multifamily apartment complex and Plaintiff's apartment unit therein are considered "housing accommodations" as defined in Nassau County Administrative Code § 21-9.7(b)(6).

99. Defendants have treated Plaintiff differently on the basis of his actual or perceived disability in violation of Nassau County Administrative Code § 21-9.2(d).

100. Defendants have discriminated against or harassed Plaintiff in the terms, conditions or privileges of the sale, rental, lease¸ or occupancy of any such housing accommodations or in the furnishing of facilities or services in connection therewith because of the actual or perceived protected status as defined in Nassau County Administrative Code § 21-9.7(c)(1)(ii).

101. Defendants have refused to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling in violation of Nassau County Administrative Code § 21-9.7(c)(1)(vi).

102. Defendants have aided, abetted, incited, compelled, or coerced the doing of any of the acts forbidden under the Nassau County Administrative Code, or attempted to do so in violation of Nassau County Administrative Code § 21-9.7(c)(3).

103. Defendants have coerced, intimidated, threatened, harassed, or interfered with Plaintiff (i) in the exercise or enjoyment of, or because he or she exercised or enjoyed any right granted or protected by this title; (ii) because he or she aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by this title; or (iii) because of the protected status of a person with whom such person has or is perceived to have a relationship or association use in violation of Nassau County Administrative Code § 21-9.7(c)(4).

104. Notice of the civil action will be delivered in person to the County Attorney of Nassau County within 10 days of filing.

105. As a direct and proximate result of Defendants' discriminatory conduct in violation of Nassau County Administrative Code, Plaintiff has suffered, continue to suffer, and will in the future suffer, great loss of housing opportunity, great and irreparable loss and injury, physical and emotional distress and pain-- including but not limited to great levels of fear, anxiety, indignity, humiliation, loss of self-esteem and self-confidence, and attendant bodily injury, violently ill, vomiting, stomach aches, physical pain, high blood pressure, migraine headaches, and otherwise sustained injury.

106. Defendant discriminatory actions were intentional, willful, and with reckless disregard for the rights of the Plaintiff. Defendant also knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in knowledgeable inaction. As a result, under Nassau County Administrative Code § 21-9.7(d)(3)(i), Plaintiff is entitled to punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that judgment be entered against Defendants as follows:

A. Plaintiff seeks declaratory judgment, declaring that the conduct of Defendants constitutes violations of the Fair Housing Act Amendments, the Rehabilitation Act, New York State Executive Law, and Nassau County Administrative Code.

B. Defendants' agents, employees, and successors, and all other persons in active concert or participation be permanently enjoined from discriminating on the basis of disability, or perceived disability, against any persons in violation of the Fair Housing Act of 1968, as amended, the Rehabilitation Act, New York State Executive Law, and Nassau County Administrative Code, including an injunction prohibiting the following:

i. discrimination in violation of the Fair Housing Act, the Rehabilitation Act, New York State Executive Law, and Nassau County Administrative Code;

ii. Housing discrimination based on disability;

iii. Making notices or statements that indicate a preference, limitation, or discrimination based on disability;

iv. Inferior terms, conditions, or privileges of a dwelling because of disability;

v. Aiding, abetting, coercing, intimidating, threatening, and discriminating based on disability;

C. Permanent injunction requiring Defendants to

i. Withdraw the Notice to Terminate Tendency, which was served upon Plaintiff on June 3, 2026;

ii. Withdraw the Holdover Petition filed against Plaintiff in June 2026;

iii. Engage Plaintiff in an interactive process to determine the necessary reasonable accommodations;

iv. To communicate with Plaintiff's sister, Dominique Jackson, regarding any tenancy issues related to Plaintiff;

v. Make the necessary reasonable accommodations;

vi. Make all necessary modifications to their policies, practices, and procedures to comply with fair housing laws;

vii. Train all management, agents, and employees on fair housing laws;

D. Have the Court retain jurisdiction over the Defendants until the Court is satisfied that their unlawful practices, acts and omissions no longer exist and will not reoccur.

E. Award such damages to Plaintiff as will fully compensate for injuries caused by Defendants' unlawful practices in violation of the Fair Housing Act;

F. Award such damages to Plaintiff as will fully compensate for injuries caused by Defendants' unlawful practices in violation of Rehabilitation Act

G. Award such damages to Plaintiff as will fully compensate for injuries caused by Defendants' unlawful practices in violation of New York State Executive Law;

H. Award such damages to Plaintiff as will fully compensate for injuries caused by Defendants' unlawful practices in violation of Nassau County Administrative Code;

I. Award punitive damages to Plaintiff for Defendants' violation of the Fair Housing Act, Rehabilitation Act, New York State Executive Law, and Nassau County Administrative Code;

J. Award Plaintiff reasonable attorney's fees, costs, and expenses incurred in prosecuting this action; and

K. Grant Plaintiff such other further relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demand a trial on the merits by jury pursuant to Fed. R. Civ. P. 38.

Dated: August 17, 2026

**LAW OFFICES OF JAMES E. BAHAMONDE, P.C.**

By: /s/ James E. Bahamonde
James E. Bahamonde
2501 Jody Court
North Bellmore, NY 11710-1940
Tel. (646) 290-8258
james@civilrightsny.com

*Attorney for Plaintiff*